UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JAMES DOUGLAS WITTE,
    Plaintiff

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,
    Defendant

Case No. 3:15-cv-00580
Chief Judge Crenshaw
Magistrate Judge King

REPORT AND RECOMMENDATION
To The Honorable Waverly D. Crenshaw, Jr., Chief Judge

Plaintiff filed a complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying his claim for Social Security disability benefits. Docket 1. The Commissioner filed an electronic copy of the administrative record. Docket 10. Plaintiff filed his First Motion for Judgment on the Record, along with a supporting memorandum of law. Dockets 14 and 15. The Commissioner responded in opposition to Plaintiff's motion. Docket 16. The matter is ripe for determination.

On June 19, 2017, the Court referred the matter to the undersigned Magistrate Judge pursuant to 28 U.S.C. §§ 631 and 636 and Administrative Order No. 24. Section 631 authorizes designation of magistrate judges to serve in districts adjoining the district for which they were appointed. Administrative Order No. 24 was entered on June 12, 2017, and signed by the Chief Judges for the Middle District of Tennessee and the Western District of Kentucky. Section 636 authorizes magistrate judges to submit reports and recommendations to district judges on any case-dispositive matter.

As discussed below, the administrative law judge's (ALJ's) decision gave little weight to the treating physician's medical opinion and great weight to the opinion of the non-examining state-agency physician. The treating physician's opinion was based on the findings of a lumbar MRI, which neither the ALJ's decision nor the non-examining physician mentioned.

Because the ALJ's weighing of the medical opinions was not supported by substantial evidence and was not in accord with applicable legal standards, the RECOMMENDATION will be to GRANT Plaintiff's First Motion for Judgment on the Record (Docket 14) and REMAND this matter to the Commissioner for a new decision identifying good reasons for the weight given to the treating physician's opinion.

**The ALJ's decision in light of the sequential evaluation process**

In June 2011, Plaintiff filed applications for Social Security disability benefits pursuant to Title II of the Social Security Act (disability insurance benefits) and Title XVI (supplemental security income benefits). Plaintiff initially alleged that he became disabled on January 1, 2007; however, he amended his alleged onset date at the administrative hearing to August 10, 2009. Administrative Record (AR), Docket 10, p. 36.

Plaintiff's claims were denied by the state agency initially and upon reconsideration.

Plaintiff requested an ALJ hearing, which was held in May 2013. The transcript of the hearing is at AR, pp. 33-58.

In August 2013, ALJ Renee S. Andrews-Turner issued a written decision denying Plaintiff's claims. AR, pp. 15-27.

In April 2015, the ALJ's decision became the Commissioner's final decision, which is the subject of the present judicial review, when the Appeals Council declined to disturb the ALJ's decision. AR, pp. 1-3.

The ALJ found that Plaintiff is not disabled through the date of decision because, although he can no longer perform his past relevant work, he retains the ability to perform other jobs, which exist in significant numbers in the national economy. ALJ's decision, AR, pp. 19 and 25.

The ALJ's decision was pursuant to the 5-step sequential evaluation process utilized by the Commissioner in evaluating all Social Security disability claims.

At Step 1 of the evaluation process, a claimant is not disabled if he engages in substantial gainful activity. The ALJ found that Plaintiff "has not engaged in substantial gainful activity since January 1, 2007, the alleged onset date." ALJ's decision, AR, p. 17.

At Step 2, a claimant must have a severe impairment (i.e., one having a vocationally-significant impact on ability to engage in basic work activities) in order to be disabled. The ALJ found that Plaintiff "has the following severe impairments: degenerative disc disease of the lumbar spine, residuals of the left ankle fracture, depressive disorder and borderline intellectual functioning." AR, p. 17.

At Step 3, a claimant is entitled to a conclusive presumption of disability if he suffers from an impairment satisfying the medical criteria of an impairment listed in Appendix 1 of the regulations. The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." AR, p. 18.

At Step 4, a claimant is not disabled if he can perform his past relevant work. The ALJ found that Plaintiff "is unable to perform any past relevant work." AR, p. 25.

At Step 5, the Commissioner must (as a threshold matter) determine the claimant's residual functional capacity (RFC). The ALJ found that Plaintiff "has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that he can lift and/or carry 20 pounds occasionally and ten pounds frequently; stand and/or walk for six hour in an eight-hour workday; sit for six hours in an eight-hour workday; frequently balance, stoop, kneel, crouch, crawl, and climb stairs and ramps; never climb ladders, ropes, and scaffolds; frequently push and pull with the left lower extremity and can have occasional exposure to wetness. He should avoid all exposure to hazards. He can understand and remember simple instructions; maintain concentration for at least two hours at a time during an eight-hour workday; occasionally interact with the general public, coworkers and supervisors; and can adapt to infrequent change in the workplace." AR, p. 19.

Additionally, the Commissioner must determine the claimant's age and education. The ALJ found that Plaintiff "was born on October 14, 1964 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date" and that he "has a limited education and is able to communicate in English." AR, pp. 25-26.

Step 5 requires the Commissioner to determine, in light of the claimant's RFC, age, education, and prior work experience, whether he retains the ability to perform other (than past relevant work) jobs, which exist in significant numbers in the national economy. The ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." AR, p. 26. The determination was based on hypothetical questions presented to a vocational expert at the administrative hearing. The vocational testimony is at AR, pp. 51-58.

**Plaintiff's arguments in light of the standards governing judicial review**

Plaintiff presents four arguments upon judicial review in his memorandum in support of First Motion for Judgment on the Record. Docket 15, p. 1. The arguments are:

1. The ALJ erred by failing to properly consider and weigh the opinion from the treating physician, Winston Griner, M.D.

2. The ALJ erred by failing to properly incorporate the opinion from the one-time joint consultative examination of psychologists Marie LaVasque, M.S. / M.A., and Susan Vaught, Ph.D.

3. The ALJ erred by failing to perform a proper credibility analysis.

4. The ALJ erred by failing to properly consider all severe impairments.

Claims 1, 2, and 3 concern the ALJ's fifth-step determination of Plaintiff's RFC.

Claims 1 and 2 are premised on the ALJ's application of the rules for weighing medical opinions at 20 C.F.R. §§ 404.1527(c) and 416.927(c). The rules generally require that, in determining a claimant's

4

RFC, more weight be assigned to the opinion of a treating source than an examining source and that greater weight be assigned to an examining source than a non-examining source.

Claim 3 is premised on the ALJ's application of the rules for determining the limitations due to pain and other subjective symptoms in light of the factors listed at 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), i.e., the pain-credibility analysis.

Claim 4 concerns the ALJ's second-step identification of Plaintiff's "severe," or vocationally-significant, impairments.

When reviewing an ALJ's finding of lack of disability pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009).

The substantial evidence standard is satisfied when a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir.2004). The standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009). In other words, "[a] reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion." Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 374 (6th Cir. 2013).

In light of the foregoing standards, in evaluating Plaintiff's Claims 1, 2, and 3, the Court will not apply the rules for weighing medical opinions and determining the limitations due to pain and other subjective symptoms de novo but will review the ALJ's application of the rules deferentially.

In evaluating Claim 4, the Court is not concerned so much with whether the ALJ expressly placed the label of "severe" on all qualifying impairments as whether the ALJ at least implicitly considered the

limiting effects of all severe and non-severe impairments. In other words, a Step-2 labeling error is deemed harmless if the ALJ did the substantive analysis at subsequent steps of the evaluation process.

**Chronological summary of the medical evidence pertaining to Plaintiff's arguments**

In or around 2003, Plaintiff hurt his back while lifting a pallet.

In February 2007, a lumbar MRI revealed "broad-based disk bulge at L3-L4, L4-L5 without evidence of significant nerve impingement." AR, p. 221.

Plaintiff alleges disability beginning in August 2009, when he fell off a ladder. The fall resulted in a comminuted fracture of the calcaneus (heel bone) of the left foot and may have exacerbated Plaintiff's low-back impairment.

In March 2010, Plaintiff underwent subtalar arthrodesis (surgical immobilization of a joint by fusion of the adjacent bones) with bone graft.

In April 2010, Plaintiff began treatment with Winston Griner, M.D.

In March 2011, a lumbar MRI was taken due to Plaintiff's complaints of lumbar radiculopathy, i.e., complaints of "back pain radiating to left lower extremity with intermittent left foot numbness." AR, p. 297. Lumbar radiculopathy, or sciatica, refers to a disease involving the nerve roots of the lumbar spine or sciatic nerve; the condition may cause pain, numbness, and tingling in the leg and buttock, rather than the lumbar spine itself (an example of referred pain). Hohman v. Comm'r of Soc. Sec., No. 14-3229-CV-S-REL-SSA, WL 4198986 n.6 (W.D. Mo. July 13, 2015).

The lumbar MRI revealed significant degenerative changes at L3-L4 and L4-L5. Specifically:

L3-L4 level shows disc space narrowing with disc bulge and a small annular tear along the posterior disc margins centrally. A very small subligamentous disc protrusion is noted slightly asymmetric to the left of midline. There is mild left lateral recess compromise and the left foramina narrowing relative to the right at this level.

L4-L5 level shows chronic disc space narrowing, disc bulge, and osteophyte formation. There is mass effect on the ventral thecal sac. Bilateral lateral recess compromise is noted and there is OMU [ostiomeatal unit] mild left foramina narrowing relative to the right.

(AR, p. 298).

In June 2011, Plaintiff filed his disability claims.

In August 2011, Plaintiff was examined at the request of the Commissioner by Albert Gomez, M.D. In his narrative report, Dr. Gomez noted that Plaintiff mentioned "an MRI done on his lower back in 2011 in state of New York." AR, p. 364.

In September 2011 (apparently not in possession of the March 2011 lumbar MRI findings), the Commissioner obtained a lumbar x-ray. The lumbar x-ray showed (not surprisingly) fewer degenerative changes than the lumbar MRI: "Probably transitional lumbarized S1 segment with mild degenerative disc space narrowing with minimal spondylosis at this level and also at L4-L5-S1. Possible minimal scoliosis." AR, p. 372.

In September 2011, based on Dr. Gomez' report and the lumbar x-ray (but not the lumbar MRI), the non-examining state-agency program physician, Anthony Pitts, opined that Plaintiff can perform a limited range of light work, i.e., he can occasionally lift 20-30 pounds and stand or sit at least 6 hours in an 8-hour day. AR, p. 373; compare Soc. Sec. Rul. 83-10, 1983 WL 31251, at *5-6 ("The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. … [T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time"). Notably, Dr. Pitts did not mention or otherwise indicate awareness of the March 2011 lumbar MRI.

In October 2012, Plaintiff's treating physician, Dr. Griner, completed the standard physical capacities assessment form, finding that Plaintiff can perform neither light nor sedentary work, i.e., he can lift less than 10 pounds and stand/walk for less than 2 hours and sit for about 3 hours during an 8-hour workday. AR, p. 463; compare Soc. Sec. Rul. 83-10, at *5 (For sedentary work, "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday").

7

At the outset of the administrative hearing held in May 2013, the ALJ asked Plaintiff to "tell me about the medical problems you have that keep you from going back to work full-time." AR, p. 38. Plaintiff responded that "I broke my back in three places" (as evidenced by the March 2011 lumbar MRI) and "it's impinged on my sciatic nerve." AR, pp. 38-39.

The ALJ's decision mentioned the February 2007 lumbar MRI, which showed no evidence of significant nerve impingement, and the September 2011 lumbar x-ray, which indicated mild disc space narrowing and minimal spondylosis. AR, p. 20 referring to AR, pp. 221 and 372. The decision did not, however, mention the March 2011 lumbar MRI findings, which formed the basis of Dr. Griner's assessment. The ALJ found that Dr. Griner's opinion, including his finding that Plaintiff can stand/walk for less than 2 hours per 8-hour workday, was an "extreme limitation[] … not supported by the imaging reports, [which] show [no] more than minimal back disease." AR, p. 24. The ALJ disagreed with Dr. Griner regarding the presence of radiculopathy. AR, p. 23.

**1. The ALJ erred by failing to properly consider and weigh the opinion from Winston Griner, M.D.**

In finding that Plaintiff has an RFC to perform a limited range of light work, the ALJ's decision gave "little weight" to Dr. Griner's opinion, which precluded both light and sedentary work, and "great weight" to Dr. Pitts' opinion, which allowed for light work. AR, pp. 23-24. When asked "[w]hat medical findings support [these assessed] limitations," Dr. Griner quoted verbatim the findings of the March 2011 lumbar MRI, which revealed significant degenerative changes at L3-L4 and L4-L5, including disc bulge, annular tear, disc protrusion, lateral recess compromise, chronic disc space narrowing, osteophyte formation, and mass effect on the ventral thecal sac. AR, p. 463 quoting AR, p. 298. Assessment at AR, p. 463 quoting MRI at AR, p. 298. Additionally, Dr. Griner noted the presence of severe to moderate osteopenia (decreased bone density), arthritis due to the residual effects of arthrodesis of the left foot, and radiculopathy. AR, p. 463.

From a lay, non-medical perspective, it is not self-evident that these degenerative changes would not preclude prolonged standing/walking, as Dr. Griner found.

Neither the ALJ nor Dr. Pitts mentioned or otherwise indicated awareness of the March 2011 lumbar MRI results. The ALJ's and Dr. Pitts' silence on this matter resulted in reversible error for several reasons.

First, the so-called treating-physician rule requires that the ALJ give a treating physician's opinion on the nature and severity of the claimant's impairment "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2).

"Controlling" weight is a term of art in the sense that, even if the ALJ does not give a treating source's opinion controlling weight, it may nevertheless be entitled to case-dispositive weight, that is, greater weight than any other opinion in the administrative record. "When [the ALJ] do[es] not give the treating source's opinion controlling weight, [the ALJ must] apply the factors [listed at Sub-Sections (c)(1) through (6)] in determining the weight to give the opinion." *Id.* These factors are: length of the treatment relationship and frequency of examination, nature and extent of treatment, supportability of the opinion based on medical signs and laboratory findings, consistency of the opinion with the record as a whole, the physician's specialization (if any), and any other relevant factor. 20 C.F.R. §§ 404.1527(c)(1)-(6); 416.927(c)(1)-(6).

The ALJ has an obligation to provide "good reasons in [his/her] notice of determination or decision for the weight [he/she] give[s] [the] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). The ALJ's reasons (stated in his/her written decision) must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5.

The Sixth Circuit interprets the foregoing requirement of giving good reasons as bestowing upon claimants a quasi-substantive right such that the reasons must appear on the face of the ALJ's decision, rather than being supplied (after the fact) by a reviewing court upon suggestion by the Commissioner or upon the court's own initiative based on examination of the administrative record: "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that [he] is not, unless some reason for the agency's decision is supplied." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (internal quotation eliminated).

The ALJ's stated reasons for giving "little weight" to Dr. Griner's opinion, which precluded light work, are not particularly good or comprehensive in light of the mandatory regulatory factors (20 C.F.R. §§ 404.1527(c)(1)-(6); 416.927(c)(1)-(6)). Those stated reasons were (in their entirety) that:

> Dr. Winston Griner provided a medical source statement for the claimant in October of 2012. However, the restrictions in that opinion are not heavily weighted. He indicated that the claimant should have no exposure to extreme cold, fumes and perfume. He opined that the claimant should avoid even moderate exposure to high humidity, chemicals and solvents. He allowed lifting no more than ten pounds ever and standing and walking for less than two hours. He allowed sitting for about three hours. There are no records that show more than minimal back disease, nothing that would support sitting limitations of only three hours, and nothing to support such limitations in exposure to respiratory irritants. The claimant lost part of his lung prior to his alleged onset date, but there is no ongoing discussion of breathing problems. These extreme limitations are not supported by the imaging reports or the absence of breathing complaints. They are also inconsistent with the full range of motion in both shoulders and both knees.

(AR, p. 24).

As suggested by the ALJ, Plaintiff has a remote history of removal of the right upper lobe of his lung in 1993. He also testified to a football injury occurring in or around 1993 (at ages 28 or 29) (AR, p. 43) resulting in a right rotator-cuff tear (in the tissues connecting muscle to bone, or tendons, around the shoulder joint). Plaintiff's lung and shoulder impairments, if any, apparently did not interfere with his ability to work prior to the alleged onset of disability.

Dr. Griner found that these impairments result in a need to avoid respiratory irritants and affect Plaintiff's ability to reach (including overhead) and to push/pull. AR, p. 464. Even if the ALJ was correct that Dr. Griner's findings in this regard were excessive (in light of the absence of breathing complaints and a full range of shoulder motion), this did not invalidate Dr. Griner's finding that Plaintiff is unable to engage in prolonged standing/walking as required to perform light work due to the residual effects of a March 2010 arthrodesis of the left foot, degenerative lumbar changes, and radiculopathy.

The ALJ's weighing of Dr. Griner's opinion does not reflect a proper consideration of the factors for determining whether or not the opinion was entitled to controlling weight and, if not, what weight is appropriate. *See Hunter v. Comm'r of Soc. Sec.*, No. 2:14-cv-00001, WL 347520, at *11, 238 Soc. Sec. Rep. Serv. 157 (M.D. Tenn.) (quoting *Hensley v. Comm'r of Soc. Sec.*, 573 F.3d 263, 267 (6th Cir. 2009) for the proposition that "we do not hesitate to remand when the Commissioner has not provided good reasons for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion").

Second, the ALJ's and Dr. Pitts' silence on the March 2011 lumbar MRI results in reversible error because, where (as in this case) the ALJ accepts the opinion of a non-examining source in preference to that of the treating source and the non-examining source was apparently unaware of significant medical facts (e.g., the March 2011 lumbar MRI findings), "we require some indication that the ALJ at least considered these facts before giving greater weight to [a non-examining source] opinion that is not 'based on a review of a complete case record.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3).

This case is analogous to *Agee v. Comm'r of Soc. Sec.*, No. 3:12–0958, WL 1164572 (M.D. Tenn. March 28, 2017) in that the non-examining state-agency program physician, upon whose opinion the ALJ relied, apparently was unaware of "pertinent MRI findings," thus depriving the program physician "of

11

the ability to base his decision on 'a complete case record ... which provides more detailed and comprehensive information than what was available to the individual's treating source.'" *Id.* at \*7 (quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at \*3).

As to whether the ALJ at least considered these facts before giving greater weight to the non-examining source opinion, the ALJ's decision mentioned the February 2007 lumbar MRI, which showed no evidence of significant nerve impingement, and the September 2011 lumbar x-ray, which indicated mild disc space narrowing and minimal spondylosis. AR, p. 20 referring to AR, pp. 221 and 372. The ALJ found that "the imaging reports" did not support Dr. Griner's findings. AR, p. 24. However, the ALJ never specifically mention the March 2011 lumbar MRI.

As in *Agee*, the ALJ failed to mention the implicitly rejected MRI findings. "When an ALJ fails to mention rejected evidence, 'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored,'" and a remand is required. *Agee* at \*8 (quoting *Morris v. Sec'y of Health & Human Servs.*, No. 86–5875, WL 34109, at \*2 (6th Cir. April 18, 1988)).

This case is also analogous to *Voorhies v. Comm'r of Soc. Sec.*, No. 1:13-0007, WL 1274343 (M.D. Tenn. April 1, 2016). In *Voorhies*, the District Court remanded, in part, because the ALJ accepted the opinion of the non-examining consultant that Plaintiff can perform medium work, which opinion was given before the lumbar MRI findings, and "the ALJ appears to have discounted entirely the significance of the lumbar MRI findings."

The reversible error in *Agee* and *Voorhies* might be stated somewhat differently: "[T]he regulations do not allow the application of greater scrutiny to a treating-source opinion [than to a non-examining source opinion] as a means to justify giving [the treating-source] opinion little weight. Indeed, they call for just the opposite." *Boles v. Comm'r of Soc. Sec.*, No. 2:12–cv–00079, WL 4506174, at \*4 (M.D. Tenn. July 23, 2015) (quoting *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379 (6th Cir. 2013)).

In addition to the Middle District of Tennessee authorities discussed above (*Hunter, Agee, Voorhies, Boles*), other district courts within the Sixth Circuit have remanded cases when the ALJ rejected the treating-source opinion and instead accepted the non-examining source opinion, which did not take into account important medical findings forming the basis of the treating-source opinion. *See e.g. Martin v. Comm'r of Soc. Sec.*, 207 F.Supp.3d 782, 791 (S.D. Ohio 2016) ("Notably, the record reviewers did not review the findings of this MRI in rendering their opinions") and *Conley v. Comm'r of Soc. Sec.*, No. 7:14-141-DCR, WL 1636443, at *6 (E.D. Ky. April 13, 2015) (collecting authorities for the proposition that "the ALJ's decision to accord great weight to [the non-examining source's] assessment was erroneous without more of an explanation concerning the underlying reasoning for his decision and in light of [the non-examining source's] inability to review the Claimant's entire medical record").

Third, a remand is required because, even if the Court were to find that the ALJ's decision implicitly considered the mandatory regulatory factors (20 C.F.R. §§ 404.1527(c)(1)-(6); 416.927(c)(1)-(6)) in determining that Dr. Griner's opinion was entitled to "little weight," and even if the Court were to find that the ALJ's reference to "the imaging reports" (AR, p. 24) implicitly contemplated the March 2011 lumbar MRI findings, a problem remains: The ALJ lacked the medical expertise to translate the raw MRI findings into functional terms in support of a conclusion that Dr. Griner's assessment (particular his finding that Plaintiff cannot stand/walk sufficiently to perform light work) is "not supported by the imaging reports, [which] show [no] more than minimal back disease." ALJ's decision, AR, p. 24. Stated somewhat differently, it is not self-evident to a lay individual (unschooled in medicine) that the March 2011 lumbar MRI findings are indicative of only "minimal back disease." Indeed, the MRI findings may explain Plaintiff's complaints of radiculopathy, which Dr. Griner accepted and the ALJ rejected. *Compare* ALJ's decision at AR, p. 23 and Dr. Griner's findings at AR, p. 463.

ALJs "must not succumb to the temptation to play doctor and make [their] own independent medical findings." *Canfield v. Comm'r of Soc. Sec.*, No. 3:12-0050, WL 816824, at *11 (M.D. Tenn. March

1, 2017) (quoting *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009)); *see also Canfield* at *11 (collecting authorities for the proposition that an it is "improper for an ALJ to make his own medical findings with respect to Plaintiff's … limitations without the benefit of any [supporting] medical opinion") and *Childress v. Comm'r of Soc. Sec.*, No. 1: 16-CV-00119-HBB, WL 758941, at *5 (W.D. Ky. February 27, 2017) (collecting authorities for the proposition that "Administrative Law Judges should not have relied on their own interpretation of MRI results when formulating a claimant's residual functional capacity").

    **2. The ALJ did not err by failing to properly incorporate the opinion from the one-time joint consultative examination of psychologists Marie LaVasque, M.S. / M.A., and Susan Vaught, Ph.D.**

In August 2011, Marie LaVasque, M.S. / M.A., and Susan Vaught, Ph.D., examined Plaintiff at the request of the Commissioner. The ALJ purported to give "great weight" to the examining-source opinion as a whole. ALJ's decision, AR, p. 24.

Plaintiff focuses on the part of the opinion that stated that Plaintiff "did not appear to have the ability to maintain a consistent work schedule due to mental health issues and while his substance abuse may play a role in this, he appears to harbor a more serious underlying thought disorder that would likely moderately limit his ability to maintain a consistent work schedule even in the absence of alcohol abuse." AR, p. 370.

The foregoing opinion regarding Plaintiff's ability to maintain a consistent work schedule assumes that he has ongoing drug addiction / alcoholism, which is part and parcel of his overall mental health issues. Additionally, the opinion speculates that an underlying thought disorder would remain even if he stopped.

Plaintiff does not allege disability due to drug addiction / alcoholism. He testified that he drinks only occasionally. AR, p. 38. The ALJ did not find that Plaintiff has a substance-abuse disorder. If the ALJ had found that Plaintiff has such disorder and is disabled, the ALJ would have been required to discount the effects of that disorder and determine whether he would still be disabled. See 20 C.F.R. §§

14

404.1535(b)(1) and 416.935(b)(1) ("The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol").

The ALJ was not required to accept a disabling opinion of inability to maintain a consistent work schedule that was premised on an impairment (substance abuse) that was not alleged and speculation as to whether, even without that impairment, another impairment (thought disorder) would render Plaintiff disabled.

### 3. The ALJ erred by failing to perform a proper credibility analysis with respect to Plaintiff's sciatica complaints.

Plaintiff received treatment on three occasions at the Middle Tennessee Health and Wellness Center in Nashville, Tennessee -- in January, February, and March of 2013. AR, p. 534. The Center diagnosed sciatica on one occasion. AR, p. 531.

In contrast, Plaintiff received treatment from Dr. Griner on many occasions from April 2010 through October 2012, when Dr. Griner completed the disability assessment form. Dr. Griner's based his opinion, in part, on a radiculopathy diagnosis (AR, p. 463), and his treatment notes are replete with references to Plaintiff's sciatica. *See e.g.* AR, pp. 304, 312, 404, and 416.

In finding that Plaintiff's complaints are incredible to the extent they preclude performance of light work, the ALJ found that Plaintiff's "credibility is most seriously challenged by his examinations done at Middle Tennessee Health and Wellness," particularly in March 2013, when he was observed to have "walked unaided" and without exhibiting signs of radiculopathy, which, according to the ALJ, "calls into question the possibility of symptom exaggeration with the use of a cane at the hearing" and "stands in stark contrast to all of the claimant's testimony." ALJ's decision, AR, pp. 22, 23, and 25.

Plaintiff argues that the foregoing findings fall short of a proper credibility analysis.

An ALJ's findings regarding credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."

15

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Nevertheless, credibility findings must be supported by substantial evidence. *Id.*

The ALJ's suggestion that Plaintiff's use of a cane at the hearing was "exaggerated" is not supported by substantial evidence. Additionally, a one-time observation at Wellness Center does not negate the Center's own diagnosis of sciatica and the treating physician's finding of inability to stand/walk sufficiently to perform light work based, in part, on sciatica (radiculopathy). This is particularly so where (as here) the treating physician's finding of sciatica was well supported by the treatment record and the MRI results.

Plaintiff has not demonstrated good cause to disturb the ALJ's remaining credibility findings. *See Smith v. Comm'r of Soc. Sec.*, 307 F.3d 377, 379 (6th Cir. 2001) (An ALJ's credibility assessment will not be disturbed "absent compelling reason").

### 4. The ALJ erred by failing to properly consider Plaintiff's diagnosed sciatica as a "severe," or vocationally-significant, impairment.

The ALJ acknowledged that Plaintiff suffers from the following "severe," or vocationally-significant, impairments: "degenerative disc disease of the lumbar spine, residuals of the left ankle fracture, depressive disorder and borderline intellectual functioning." ALJ's decision, AR, p. 17. Plaintiff argues that the ALJ erred in not including in this list: sciatica, hypertension (HTN), generalized anxiety disorder (GAD), asthma, and degenerative disc disease (DJD) of the shoulders.

It is "legally irrelevant" if a diagnosed impairment goes unmentioned in an ALJ's list of severe impairments so long as the ALJ acknowledged at least one severe impairment and considered the limiting effect of all impairments (severe and non-severe) in determining the claimant's RFC. *Anthony v. Comm'r of Soc. Sec.*, 266 F. App'x 451, 457 (6th Cir. 2008).

The ALJ erred in not recognizing as severe Plaintiff's sciatica because the ALJ's decision did not consider the limiting effect of this impairment in determining Plaintiff's RFC. Plaintiff has not shown that the other impairments required greater limitations.

16

**RECOMMENDATION**

In light of the foregoing, the Magistrate Judge RECOMMENDS that the Court GRANT Plaintiff's First Motion for Judgment on the Record (Docket 14) and REMAND this matter to the Commissioner for a new decision identifying good reasons for the weight given to the treating physician's opinion and for any additional administrative proceedings deemed necessary and appropriate by the Commissioner.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).